1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA

10              SAN JOSE DIVISION

11  ROSALIND LOPEZ,                    )  Case No.: 11-CV-01632-LHK (PSG)
                                       )
12                     Plaintiff,      )  **ORDER DENYING DEFENDANT**
        v.                             )  **WAL-MART STORES, INC.'S**
13                                     )  **MOTION TO RETAIN**
                                       )  **CONFIDENTIAL DESIGNATIONS;**
14  WAL-MART STORES, INC.,             )  **ORDER GRANTING-IN-PART**
                                       )  **DEFENDANT WAL-MART STORES,**
15                     Defendant.      )  **INC.'S MOTION FOR PROTECTIVE**
                                       )  **ORDER**
16                                     )
                                       )  **(Re: Docket Nos. 26, 30)**
17  _____)

18          Defendant Wal-Mart Stores, Inc. ("Wal-Mart") moves to retain its designation of

19  "confidential" for certain internal policies and guidelines governing its employment practices. Wal-

20  Mart also moves for protective order to avoid the deposition of its Senior Associate General

21  Counsel of Employment Practices, Linda A. Whittaker ("Whittaker"). Plaintiff Rosalind Lopez

22  ("Lopez") opposes both motions. On March 13, 2012, the parties appeared for hearing. Having

23  reviewed the papers and considered the arguments of counsel, the court DENIES Wal-Mart's

24  motion to retain the "confidential" designation for certain documents and GRANTS-IN-PART

25  Wal-Mart's motion for protective order.

26
27
28

United States District Court
For the Northern District of California

# I.      BACKGROUND

Lopez is fifty years old and held various positions while she was employed at Wal-Mart between 1991 and September 17, 2009. On November 24, 2008, she underwent surgery to replace her right ankle. Wal-Mart granted Lopez leave until April 2009. Upon her return in April 2009, Lopez requested intermittent days off because of ongoing physical complaints related to her ankle surgery. Wal-Mart denied all of those requests.

Lopez alleges that constantly walking the floors at Wal-Mart floor further aggravated her right ankle and that her health care provider authorized additional medical leave from June 11, 2009 to August 2, 2009. Wal-Mart again granted leave, but the leave was unpaid. On July 20, 2009, Lopez underwent additional surgery on her right ankle and her health care provider informed her that additional leave would be required to recuperate fully. On July 31, 2009, Lopez advised Wal-Mart of her additional leave requirements and on August 1, 2009, she submitted a form under the Family Medical Leave Act ("FMLA") seeking leave until August 17, 2009. Together with the FMLA form, Lopez provided Wal-Mart with a note from her podiatrist confirming that Lopez could return to work on August 17, 2009.

On August 7, 2009, Wal-Mart advised Lopez that under the FMLA her leave would expire on August 1, 2009 and that if she did not return to work by August 10, 2009, her position would not be guaranteed upon her return. On August 17, 2009, Lopez sought to return to work but the store manager advised her that her position no longer existed. Lopez called the human resources department and she was reinstated. The store manager advised Lopez, however, that her assistant manager position had been lost because she had exhausted her leave of absence. In addition, the store manager advised Lopez that she had thirty days to locate an alternate position at Wal-Mart or she would be subject to termination. Because there were no open assistant manager positions at the time, the store manager informed Lopez she was left to take an hourly job. Lopez alleges that she applied for an alternate position but it was not offered to her. On September 18, 2009, the store manager terminated her employment.

**United States District Court**
For the Northern District of California

Case No.: C 11-01632 LHK (PSG)
ORDER

Lopez alleges that Wal-Mart failed to provide a reasonable accommodation for her disability and that Wal-Mart terminated her based on discrimination related to her disability and age and in retaliation for taking leave and requesting accommodations for her right ankle.

## II.    LEGAL STANDARDS

### A.  Stipulated Protective Order

The stipulated protective order in this case provides that a party or person may designate "confidential" information or tangible things that qualify for protection under Rule 26(c).[1] Under Fed. R. Civ. P. 26(c)(1)(G), the court may, for good cause, issue an order protecting a party or person from having to reveal, or to reveal in a specified way, a trade secret or other confidential research, development, or commercial information. The designating party bears the burden of persuading the court that the information or tangible thing should remain "confidential."[2]

### B.  Protective Order

A party or person may move for a protective order upon a showing of good cause to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.[3] If the court finds good cause, among various options, it may forbid the discovery entirely, specify certain terms for the discovery to be taken, prescribe an alternative method of discovery, or limit the scope of such discovery.[4]

## III.    DISCUSSION

### A.  Wal-Mart's Motion to Retain "Confidential" Designations

In response to document requests propounded by Lopez, Wal-Mart produced certain internal policies and guidelines governing employment practices at the company for the 18 year period she was employed there.[5] Wal-Mart designated the documents "confidential" and contends

---

[1] *See* Docket No. 21 at ¶ 2.2.

[2] *See id.* at ¶ 6.3.

[3] Fed. R. Civ. P. 26(c)(1).

[4] *See id.*

[5] The documents include internal policies and guidelines for employee discipline, demotion, discharge, evaluation of employee performance, maintenance of employee files, compensation, benefits, bonus pay, raises, incentives, severance pay packages or agreements, disability

3

Case No.: C 11-01632 LHK (PSG)
ORDER

they constitute commercial information. These documents are distributed to company employees only. Wal-Mart developed the policies and guidelines solely for internal use and for the operation of its business. Wal-Mart argues that if the information is made public, its competitors may gain a business advantage by better understanding Wal-Mart's policies. Wal-Mart also argues that disclosure of the documents exposes them to further liability.

Lopez responds that Wal-Mart has not met its burden to establish that the documents should remain "confidential." Wal-Mart is no stranger to discrimination claims in this district and elsewhere. In fact, there are scores of these cases involving Wal-Mart and in some of them, Wal-Mart's policies are part of the public record. In 2001, Wal-Mart entered into a consent decree agreeing to promulgate policies on reasonable accommodation, to post notices of the consent decree, to train managers, and to appoint an ADA Coordinator. Lopez argues that the consent decree forms the basis for Wal-Mart's current written policies and procedures and is a matter of public record. Even so, in the document production here, Wal-Mart designated the consent decree as "confidential." Only after Lopez pointed out that the consent decree was public did Wal-Mart withdraw the designation. In other cases, too, Lopez has been able to locate Wal-Mart's policies in public record and again after pointing it out, caused Wal-Mart to withdraw its "confidential" designation of documents.

The court agrees with Lopez. Wal-Mart has not met its burden of persuading the court that policies and guidelines governing its employment practices warrant protection. While the court notes that in its reply brief, Wal-Mart has made an effort to reduce the scope of documents designated "confidential," Wal-Mart still has not shown why even these policies and documents reflecting compensation, management, and evaluation of its employees should be considered commercial information.[6] Wal-Mart employs more than a million people and admitted at the

discrimination, discrimination or retaliation, layoffs or reductions in work force, paid and unpaid leaves of absence, sick leave, PTO, vacation, employee medical information and documentation, absences, meetings and communications with human resources, open access policy, and termination procedures.

[6] In the reply brief, Wal-Mart sets forth (in a table format) which documents should remain confidential. It does not indicate, however, whether Wal-Mart conducted an additional review and how this specific list was determined. *See* Docket No. 34 at 2-5.

Case No.: C 11-01632 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

1  hearing that it has taken no steps whatsoever to ensure that these employees keep the policies and

2  guidelines confidential. In fact, Lopez states that she herself produced many of these policies from

3  her own files. Wal-Mart's motion is denied.

4      **B. Wal-Mart's Motion for Protective Order**

5          Wal-Mart alleges that Lopez noticed the deposition of Whittaker merely to annoy and

6  harass her. Whittaker is corporate counsel and supervises this case. Wal-Mart disputes that

7  Whittaker's prior role as an ADA coordinator at Wal-Mart in 2001 makes her testimony relevant or

8  likely to lead to the discovery of admissible evidence especially since the ADA policies

9  implemented in response to the consent decree are not the same ones that governed Lopez's

10  requests for leave in 2008-2009. As support for this position, Whittaker declares that she has not

11  "been involved in developing ADA policy since at least early September 2005 and was not

12  involved in drafting, revising or applying the versions of Wal-Mart's ADA policies that were in

13  effect at the time of plaintiff's requests for leave."[7] Wal-Mart also alleges that Whittaker qualifies

14  for protection under an "apex" standard because she is considered a high-level corporate executive,

15  she is extremely busy and has many responsibilities and would be unduly burdened by being

16  subjected to a pointless deposition.[8]

17          Lopez again points out that Wal-Mart has faced repeated enforcement actions and

18  numerous claims of discrimination by former employees. Among these is the 2001 consent decree

19  entered in *Brady v. Wal-Mart*[9] that required Wal-Mart to hire an ADA coordinator to implement

20  and oversee efforts to improve future employment practices governing its disabled workers.

21  Whittaker held this position for four years. Her responsibilities included the following:

22      ●   coordinating Wal-Mart's compliance with the ADA;

23      ●   ensuring Wal-Mart's compliance with the consent decree;

---

[7] *See* Docket No. 31 at ¶ 3.

[8] *See, e.g., In re Google Litig.,* No. C 08-03172 RMW (PSG), 2011 U.S. Dist. LEXIS 120905, at *10 (N.D. Cal. Oct. 19, 2011); *Kennedy v. Jackson Nat'l Life Ins. Co.,* No. C 07-0371 CW (MEJ), 2010 U.S. Dist. LEXIS 47866, at *7 (N.D. Cal. Apr. 22, 2010); *Google, Inc. v. Am. Blind & Wallpaper Factory,* No. C 03-5340 JF (RS), 2006 U.S. Dist. LEXIS 67284, at *9-10 (N.D. Cal. Sept. 6, 2006).

[9] 531 F.3d 127, 136 (2nd Cir. 2008).

Case No.: C 11-01632 LHK (PSG)
ORDER

- evaluate claims of undue hardship;

- maintain records for all employees' requests for accommodation under the ADA;
- report to the Special Master and the Equal Opportunity Employment Commission on an annual basis regarding Wal-Mart's efforts to accommodate individuals with disabilities;

- act as a liaison between Wal-Mart and the Special Master;

- assist in the development of Wal-Mart's ADA policy;

- assist in the development and implementation of Wal-Mart's training program; and

- resolve employee appeals from denials of requests for reasonable accommodation.

Lopez contends that even though Whittaker's position as ADA coordinator concluded in late 2005, a number of the policies she implemented remain in effect today. For example, "PD-58" was in effect in 2009 and required mandatory use of the "Reasonable Accommodation Packet." Lopez argues that Whittaker was responsible for developing this policy, and perhaps other disability policies, and that the policy was a direct consequence of the 2001 consent decree.

The court agrees with Wal-Mart, but only in part. Whittaker's testimony regarding her role as in-house counsel monitoring this specific case is likely precluded by the attorney-client privilege and work-product doctrines. Lopez should, however, be able to pursue discovery in support of her punitive damages claim by inquiring whether any versions of the disability policies in effect when she took leave in 2008-2009, such as PD-58, was implemented in violation of the 2001 consent decree.[10] While the court has serious doubts whether Whittaker qualifies as an "apex" witness, it is nevertheless appropriate to limit Whittaker's deposition to no more than two hours.

## IV.   CONCLUSION

Wal-Mart's documents related to employment practices and guidelines shall be no longer designated as "confidential."

No later than April 15, 2012, Wal-Mart shall make Whittaker available for a deposition to

---

[10] *Cf. Brady*, 531 F.3d at 136 (holding that evidence regarding consent decree was admissible regarding Wal-Mart's awareness of its legal obligations under the ADA).

Case No.: C 11-01632 LHK (PSG)
ORDER

United States District Court
For the Northern District of California

1    last no more than two hours.

2    **IT IS SO ORDERED.**

3

4    Dated:    3/19/2012

5                                                                PAUL S. GREWAL
                                                                 United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: C 11-01632 LHK (PSG)
ORDER

**United States District Court**
For the Northern District of California